**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

PATRICK S. RYAN,

    *Plaintiff*,

  v.

DONALD J. TRUMP, in his official
capacity as President of the United States,

  and

WILBUR L. ROSS, JR., in his official
capacity as Secretary of Commerce,

    *Defendants*.

Case No. 3:20-cv-05948

**COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiff Patrick S. Ryan, for his Complaint against Defendants Donald J. Trump, in his

official capacity as President of the United States; and Wilbur L. Ross, Jr., in his official capacity as

Secretary of Commerce, alleges as follows:

## NATURE OF THE ACTION

1.   This action is brought by a U.S. employee of TikTok, Inc. against the President of

the United States and the Secretary of Commerce to prevent the implementation of the President's

August 6, 2020 Executive Order purporting to ban all "transactions" with TikTok, to the extent that

order would prevent TikTok from paying its U.S. employees their wages and salaries when the

order takes effect on September 21, 2020.

2.   The President's sweepingly broad Executive Order purports to prohibit "any

transaction" between any person or entity subject to the jurisdiction of the United States on the one

hand, and ByteDance Ltd. or any of its subsidiaries, on the other hand.  TikTok, Inc. is a U.S.

company with 1,500 employees in the United States working across several offices, including the

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

Company's headquarters in Culver City, California. TikTok, Inc. is indirectly owned by ByteDance Ltd., a Cayman Island company. TikTok is neither owned, operated, nor controlled by China or the Chinese government. Indeed, TikTok does not even operate in China.

3. The Executive Order directs the Department of Commerce to "identify the transactions" subject to the order but states that the Department of Commerce does not need to identify the subject transactions until the day the order takes effect.

4. The Executive Order does not define what "transactions" are covered or whether a transaction includes financial and non-financial activities. For example, is a "transaction" simply the dictionary definition of "the action of conducting business" or "an exchange or interaction between people?"

5. It is impossible to know now whether the Commerce Department will exempt the payment of wages and salaries from the dictates of the Executive Order, and Plaintiff will not know until the day the order is to take effect, but any plain reading of the language of the order would include the payment of wages and salaries to U.S. employees of TikTok within that definition.

6. By prohibiting "[a]ny conspiracy formed to violate any of the prohibitions set forth in this order," the Executive Order purports to create a new and unknowable basis for "conspiracy" that is not currently available under federal law.

7. In criminal law, a conspiracy is an agreement between two or more persons to commit a crime at some time in the future. Specifically, under federal law, 18 U.S.C. § 371, a conspiracy is:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

8.     Given the severe civil and criminal penalties in place for violating the Executive Order, and the overbroad nature of its language, it is obvious that TikTok and its employees, as well as other companies involved in the process of distributing wages and salaries to U.S. employees, such as ADP, banks, and credit companies, would not dare to engage in any activity that might be construed as a violation. The broad language of the order necessarily will create a chilling effect for any person or entity that has contracted with or that does business with TikTok.

9.     The 1,500 TikTok employees working in the U.S. – as well as their families – need to know whether they will be paid next month.  These employees include U.S. citizens that have families to feed, rents and mortgages to pay, and health care to manage.  In addition, many TikTok employees working in the United States are here on H1B Visas, which require that their employer sponsor their visa status.  These workers, lawfully present in the United States and acting in reliance on their employment relationship with TikTok, as well as in reliance on the U.S. government's H1B visa process, face having to leave the U.S. immediately – or risk deportation – if their employment status is constructively terminated by the effect of the Executive Order.

10.     Many TikTok employees left good-paying jobs at other tech companies to join TikTok in the past six months.  Indeed, last year at this time, TikTok had fewer than 300 employees in the US; today it has more than 1,500.

11.     Furthermore, TikTok employees in the United States – U.S. persons and citizens – have been defamed and disgraced by the President's Executive Order, which accuses TikTok, which is not based in the People's Republic of China, and its U.S. employees of, among other things, working for the Chinese Communist Party, building dossiers on U.S. citizens and defense

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

NDCA 3:20-cv-05948

contractors for the purpose of blackmail and corporate espionage, censorship, and even spreading conspiracy theories about the origins of the Coronavirus.

12.     The President made these accusations in the Executive Order without any evidence that any such action or activity has ever taken place.  Indeed, the entire basis for the Executive Order rests on hypothetical concerns that "threaten" to do something or that are "potentially allowing" something to occur.  There is not one statement or claim or shred of evidence that any of the national emergency concerns cited by the President in his Executive Order either have occurred or are about to occur.  The Executive Order is nothing more than a political, China-bashing, smear intended to bully a social media platform whose users have been critical of this President in order to rally voter support for a failed Presidency and flailing re-election campaign.

13.     The U.S. employees of TikTok are pawns in a political spitting match between China and President Trump, who has decided to make "Tough on China" a central theme of his embattled re-election campaign.  In addition, TikTok is an appealing political target for President Trump because he believes that the popular social media platform was instrumental in causing the campaign to embarrass itself over the expected attendance at his political rally in Tulsa, Oklahoma on June 20, 2020.

14.     After the rally, thousands of young people on TikTok claim to have ordered tickets for the Tulsa rally with no intention of attending, causing the Trump Campaign to announce that "millions" of people had signed up to attend the rally.  Rather than "millions" showing up for the rally, barely 6,200 people, including press and campaign organizers, attended in an arena with a capacity of more than 19,000.  Press reports about a "dejected," "humiliated," and "furious" President Trump were widespread, and resulted in him firing his campaign manager the next day.

- 4 -

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

15.     President Trump's August 6 Executive Order is an unlawful and unconstitutional abuse of executive power that violates the Takings Clause and Substantive and Procedural Due Process rights of TikTok employees guaranteed by the Fifth Amendment of the U.S. Constitution, as well as a violation the Administrative Procedures Act and the All Writs Act.

16.     By this lawsuit, plaintiff Patrick S. Ryan seeks a declaratory judgment and a preliminary injunction preventing Defendants President Trump and Secretary Ross from extending the effect of the Executive Order to include the payment of wages and salaries to TikTok employees in the United States, and from interpreting the Executive Order to prohibit otherwise lawful activities by U.S.-based TikTok employees in exercise of their own rights under the laws and Constitution of the United States.

## **PARTIES**

17.     Plaintiff Patrick Spaulding Ryan is an employee of TikTok, Inc.  At all relevant times, Mr. Ryan has been and continues to be a resident of the State of California, living in Belmont, California.  Mr. Ryan was hired by TikTok, Inc. in March 2020 as its Technical Program Manager, working out of the company's Mountain View, California office.

18.     Before moving to TikTok, Mr. Ryan was an engineer at Google, Inc. for nine years.  Mr. Ryan has a BA and MBA from the Middlebury Institute of International Studies in Monterey, California, a JD from the University of Texas at Austin, and a PhD in Law from Katholicke Universiteit Leuven in Belgium.  He is licensed to practice law in California, Colorado, New York, and New Jersey.

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

19.     Defendant Donald J. Trump ("President Trump") is the President of the United States.  He is sued in his official capacity.  In that capacity, he issued the Executive Order challenged in this lawsuit.

20.     Defendant Wilbur L. Ross, Jr. ("Secretary Ross") is the United States Secretary of Commerce and is sued in his official capacity.  The Secretary is responsible for all aspects of the operation and management of the United States Department of Commerce, including adopting rules and regulations to implement the Executive Order.

## **JURISDICTION AND VENUE**

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as the claims asserted herein arise under and pursuant to the U.S. Constitution, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C.A. §§ 1701–1706, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*.  The Court has additional remedial authority under 28 U.S.C. §§ 2202 and 1651.

22.     An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

23.     Plaintiff's claims for declaratory and injunctive relief are authorized under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

24.     Venue is proper in this District pursuant to  28 U.S.C. § 2201 and § 1391(e)(1) because defendants President Trump and Secretary Ross are officers of the United States acting in their official capacities and (1) the Plaintiff is a resident of this District; and (2) a substantial part of the events giving rise to the claims asserted herein occurred or will occur in this District.

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

## BACKGROUND FACTS

### What is TikTok?

25.     TikTok is a short-form video-sharing app that allows users to create and share 15-second videos on any topic from their iPhone or Android devices.  TikTok offers users a wide selection of sounds and song snippets along with options to add special effects and filters.  It has become one of the most popular social platforms among Generation Z.  TikTok has been downloaded more than 2.3 billion times worldwide and has more than 100 million users in the U.S.

26.     TikTok was created out of a merger of two popular social media apps: Musical.ly, founded in 2014 by Alex Zhu and Louis Yang, and Douyin, launched in China in 2016.  Within a year, Douyin had 100 million users and 1 billion video views each day.  Douyin is owned by the tech giant, ByteDance Ltd. ("ByteDance"), founded in 2012 by a then 29-year old entrepreneur Zhang Yiming.  Today, ByteDance is worth more than $100 billion, making it the most valuable private company in the world; Forbes magazine estimates Mr. Zhang's net worth at $16.2 billion.

27.     In September 2017, Douyin expanded outside of China to select international markets under a new name – TikTok.  The platform quickly rose to the top of the charts in Thailand, Japan, and other Asian markets.  As TikTok started to gain traction globally, Musical.ly was becoming the dominant short-form video platform in the United States.

28.     In November 2017, ByteDance purchased Musical.ly in a deal valued at more than $1.0 billion.  In August 2018, ByteDance shut down Musical.ly and merged the platform into TikTok.  TikTok operates around the world but not in China.  Douyin continues to operate as the social media platform in China.  The two platforms and companies – Douyin and TikTok – are entirely separate and distinct.

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

NDCA 3:20-cv-05948

29.     TikTok's popularity has skyrocketed in the U.S., where the app has an estimated 100 million users.  TikTok's popularity also has increased around the world.  In April 2020, TikTok surpassed 2 billion downloads worldwide across both iOS and Android devices, according to the app analytics firm Sensor Tower.  TikTok currently is the most downloaded app in 2020.

30.     TikTok's U.S. operations are conducted through the entity TikTok, Inc., a U.S. company incorporated under the laws of the State of California, and headquartered in Culver City, California.  TikTok now has approximately 1,500 employees in offices across the United States and has pledged to add 10,000 more jobs by 2023.  A year ago, the number of TikTok employees in the United States was less than 300.

31.     TikTok has an American CEO, Kevin Mayer, a former Disney executive, and a Chief Information Security Officer (CISO) with decades of U.S. military and law-enforcement experience.  TikTok U.S. user data is stored on servers in the United States and Singapore – not in China.  The data collected and maintained by TikTok on these servers is not accessible in China or by any company or governmental entity in China.

**President Trump's Disdain for TikTok**

32.     In June 2020, the Trump campaign was planning its first official campaign rally in Tulsa, Oklahoma.  Days before the event, President Trump tweeted that "Almost One Million people request tickets for the Saturday Night Rally in Tulsa, Oklahoma!"  According to the Tulsa Fire Department, less than 6,200 people wound up attending the rally.

33.     President Trump was reportedly "furious" about the "underwhelming" crowd and fuming at his campaign staff.  The fallout after the Tulsa rally included the firing of President

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

Trump's campaign manager, Brad Parscale, who orchestrated the rally and promised a crowd so large that the campaign required an "overflow" stage.

34. One day after the rally, reports surfaced that an anti-Trump campaign on TikTok may have been partially responsible for the embarrassing turnout at the Tulsa rally. Thousands of TikTok users posted short videos joking that they could not make the rally, but that they had registered for free tickets on the "Trump 2020" website.

35. In addition, New York Democratic Congresswoman Alexandria Ocasio-Cortez taunted President Trump, cheering that the campaign "got ROCKED by teens on TikTok who flooded the Trump campaign w/ fake ticket reservations & tricked you into believing a million people wanted your white supremacist open mic enough to pack an arena during COVID."

36. Two weeks after the Tulsa debacle, Secretary Pompeo suggested that the United States was considering banning TikTok over privacy concerns. Secretary Pompeo explained that he did not "want to get out in front of the president," offering an opening for President Trump to explain the administration's motivation behind the possible ban. One day later, in an interview with Greta Van Susteren, President Trump explained that he was considering banning TikTok in retaliation for Beijing's handling of the coronavirus.

37. On that same day, a TikTok spokesperson stated that "TikTok is led by an American CEO, with hundreds of employees and key leaders across safety, security, product, and public policy here in the U.S. We have no higher priority than promoting a safe and secure app experience for our users … [w]e have never provided user data to the Chinese government, nor would we do so if asked."

38. Moreover, prominent TikTok users like Sarah Cooper and others have attracted millions of viewers and widespread mass media attention based on TikTok posts that satirize President Trump.

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

**The Executive Order Banning TikTok**

39.     On May 15, 2019, President Trump issued Executive Order 13873, titled "Securing the Information and Communication Technology Services Supply Chain."  84 FR 22689 (May 15, 2019).  Executive Order 13873 declared a "national emergency" with respect to the threat posed by unidentified "vulnerabilities in information and communications technology and services. . ."  The order did not identify any particular company or country that posed such a national security threat.

40.     On August 6, 2020 – more than fourteen months after this first executive order – President Trump issued Executive Order 13942, titled "Addressing the Threat Posed by TikTok." 85 FR 48637 (Aug. 6, 2020) (the "Executive Order").   The Executive Order does not declare a new national emergency.  Rather, it relies on powers purportedly available by the national emergency declared in the earlier May 15, 2019 executive order and declares that "action must be taken at this time to address the threat posed by one mobile application in particular, TikTok."

41.     Despite this statement, President Trump signed an additional executive order that same day targeting another purported Chinese-owned app called WeChat.  *See* Executive Order 13943, titled "Addressing the Threat Posed by WeChat, and Taking Additional Steps to Address the National Emergency with Respect to the Information and Communications Technology and Services Supply Chain."  85 FR 48641 (Aug. 6. 2020).

42.     The Executive Order directed at TikTok purports to alter the legal rights and obligations of private parties and U.S. persons.  Section 1(a) of the Executive Order states that "any transaction by any person. . .with ByteDance Ltd. . . .or its subsidiaries . . . . shall be prohibited beginning 45 days after the date of this order. . . ."

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

43.     Section 1(c) of the Executive Order states that "45 days after the date of this order, the Secretary [of Commerce] shall identify the transactions subject to subsection (a) of this section."

44.     Section 4 of the Executive Order further empowers Secretary Ross "to take such actions, including adopting rules and regulations, and to employ all powers granted to me by IEEPA as may be necessary to implement this order."

45.     Section 2(a) of the Executive Order states that "Any transaction by a United States person or within the United States that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate the prohibition set forth in this order is prohibited."  Further, Section 2(b) of the Executive Order states that "Any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited."

46.     Under the terms of the Executive Order, any person or entity that engages in a prohibited "transaction" may be prosecuted under IEEPA, which provides for civil penalties of up to $250,000 and criminal penalties of as much as 20 years in prison and $1 million in fines.  *See* 50 U.S.C. § 1705(b)-(c).

47.     In addition to the powers granted under IEEPA, the Executive Order claims to derive  its legal authority under the National Emergencies Act ("NEA"), 50 U.S.C. §§ 1601 *et seq.*, which was enacted by Congress in 1976 specifically to limit the powers of the President – not to expand those powers.  Indeed, the NEA was drafted to "ensure" that the President's "extraordinary" emergency powers would "be utilized only when emergencies actually exist, and then, only under safeguards of congressional review."

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

48.     Thus, the NEA allows the President to use emergency powers authorized by Congress through other federal statutes only where there is a national emergency that has been declared in accordance with specific statutory requirements.  50 U.S.C. § 1621.

49.     Among other actions required by the NEA, President Trump must specify the statutory powers he intends to invoke upon issuing a national emergency.  *See* 50 U.S.C. § 1631.  He must also publish the declaration of a national emergency in the Federal Register and transmit it to Congress "immediately."  50 U.S.C. § 1621(a).  Every six months thereafter, for as long as the emergency remains in effect, the President must transmit to Congress "a report on the total expenditures incurred by the United States Government during such six-month period which are directly attributable to the exercise of powers and authorities conferred by such declaration."  50 U.S.C. § 1641(c).  Each House of Congress, in turn, must meet at least once every six months following the declaration "to consider a vote on a joint resolution to determine whether that emergency shall be terminated."  50 U.S.C. § 1622(b).

50.     Any national emergency declared by the President automatically terminates after one year unless the President publishes in the Federal Register and transmits to Congress a notice that the emergency "is to continue in effect after such anniversary."  50 U.S.C. § 1622(d).

51.     The IEEPA grants the President of the United States limited emergency powers when the President has declared a national emergency, pursuant to the NEA, with regard to an "unusual and extraordinary threat, which has its source in whole or in substantial part outside the United States[.]"  50 U.S.C. § 1701(a).  "Any exercise" of the powers granted by the IEEPA "to deal with any new threat shall be based on a new declaration of national emergency which must be with respect to such threat."  50 U.S.C. § 1701(b).

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

52.     The IEEPA does not grant the President unlimited powers during national emergencies.  Rather, the statute imposes specific limits on the emergency powers it authorizes.

**The Executive Order Defames and Disgraces TikTok Employees**

53.     The Executive Order asserts three accusations against TikTok.  However, the only way these accusations could occur is through the actions, cooperation, and collaboration of U.S.-based TikTok employees.

54.     The first accusation in the Executive Order states that "TikTok automatically captures vast swaths of information from users, including Internet and other network activity information such as location data and browsing search histories.  This data collection ***threatens to allow*** the Chinese Communist Party access to American's personal and proprietary information – ***potentially allowing*** China to track the location of federal employees and contractors, build dossiers of personal information for blackmail, and conduct corporate espionage."  (Emphasis added).

55.     The Executive Order fails to state that the harvesting of data from public social media platforms is presumptively legal under U.S. law, except where expressly and specifically prohibited by federal or state law, and is a fundamental component of the business model of many U.S. companies such as Facebook, Google, Snapchat, Instagram, Twitter, and others.

56.     The other claims in this accusation are merely hypothetical concerns that have no basis in fact or evidence.  However, the public implication is that employees of TikTok – including U.S. citizens – would engage in corporate espionage, spy on federal employees and contractors, and blackmail their fellow U.S. citizens.  Essentially, President Trump is calling TikTok's employees Communist sympathizers, Chinese spies, and blackmailers.  These accusations cause and will

NDCA 3:20-cv-05948

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

continue to cause TikTok employees emotional stress, public ridicule, and community

ostracization, potentially even physical harm or violence.

57.     The second accusation in the Executive Order states that "TikTok *reportedly* censors

content that the Chinese Communist Party deems politically sensitive, such as content concerning

protests in Hong Kong and China's treatment of Uyghurs and other Muslim

minorities."  (Emphasis added).

58.     The Executive Order's use of the term "censorship" implies that TikTok is

controlled by the Chinese Government, as censorship is something that governments do, not private

companies.  Many U.S. companies, such as newspapers, television and radio, Facebook, Instagram,

Snap Chat, Twitter and others regulate the content that is displayed or conveyed through their

product or platform.  This is "content curation" not "censorship" and is normal and legal.  In fact,

Congress has acted more than once to provide express legal support for Internet companies to

moderate or curate content, including the safe harbor provisions of the Communications Decency

Act and the notice-and-takedown provisions of the Digital Millennium Copyright Act.

59.     Moreover, the accusation of "censorship" may be true for products and services that

operate in China and are licensed for use within China, but not outside China.  Indeed, all

companies that operate in China, including, Microsoft, Oracle, Apple, IBM, and others are subject

to various restrictions imposed by the Chinese Government.  But TikTok is not a product available

in China, and TikTok is not a Chinese company; it is a U.S. company.  As such, there simply is no

Chinese Government restriction or requirement imposed on the content displayed on the TikTok

platform.

60.     The third accusation in the Executive Order states that "This mobile application *may*

*also be used* for disinformation campaigns that benefit the Chinese Communist Party, such as when

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

TikTok videos spread debunked conspiracy theories about the origins of the 2019 Novel Coronavirus."  (Emphasis added).

61.     Again, the Executive Order cites no evidence of any actual wrongdoing.  Indeed, the Executive Order is not even clear what the supposed "debunked" conspiracy theory is concerning the coronavirus, whether it is the U.S. Government's conspiracy theory that the virus was created in a lab in Wuhan, China, or the Chinese Government's conspiracy theory that the U.S. military planted the virus in China.  Either way, social-media platforms are not responsible for fact-checking every piece of content that is posted on their platforms.  Indeed, President Trump is notorious for promoting all kinds of debunked conspiracy theories on his social media platform of choice – Twitter.

62.     Due to the overbroad language of the Executive Order and the failure of the Department of Commerce to clarify the definition of what constitutes a prohibited "transaction" under the order, Plaintiff and all TikTok employees in the United States have a reasonable fear that the Company will be prohibited from paying their wages and salaries starting on September 21, 2020.

63.     TikTok has told Plaintiff that the language of the Executive Order is so broad as to include a prohibition on paying any wages or salaries to U.S. employees, and that the Company does not wish to violate the terms of the Executive Order.

64.     Without the intervention of this Court, plaintiff and other U.S. employees of TikTok may not be paid their wages and salaries after September 20, 2020.

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

### FIRST CAUSE OF ACTION
### (Takings Clause – Fifth Amendment)

65.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

66.     Wages and salaries constitute "private property" under the Takings Clause of the  Fifth Amendment of the U.S. Constitution.

67.     The Executive Order as written will take Plaintiff's private property for public use in that the prohibition against paying employees' wages and salaries is part of President Trump's attempt to purportedly protect the public from a national emergency threat.

68.     The Executive Order as written will prevent Plaintiff and other U.S. employees of TikTok from receiving their wages and salaries starting on September 21, 2020, without any "just compensation" to such employees for this "taking."

69.     Therefore, the Executive Order constitutes an unconstitutional taking of Plaintiff's property without just compensation in violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution.

70.     Defendants' constitutional violations will cause ongoing irreparable harm to Plaintiff.

### SECOND CAUSE OF ACTION
### (Due Process – Fifth Amendment)

71.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

72.     The Due Process Clause of the Fifth Amendment provides that "[n]o person shall. . . be deprived of life, liberty, or property, without due process of law."  The Due Process Clause further requires that parties deprived of their property receive adequate notice and an opportunity to be heard.

73.     Plaintiff has received no notice or opportunity to respond to the Executive Order or the deprivation of property rights contemplated the order.  Indeed, the Executive Order contemplates that the government will not notify plaintiff whether the payment of wages and salaries is a prohibited "transaction" under the order until the very day order takes effect.

74.     Due process requires that the government be constrained before it acts in a way that deprives individuals of liberty or property interests protected under the Due Process Clause of the Fifth Amendment.

75.     Plaintiff Ryan has a constitutionally protected property interest in receiving his wages and salary from TikTok.

76.     Defendants' actions have denied or will deny Plaintiff the right to receive his wages and salary from his employer, TikTok.  Such actions, taken pursuant to the Executive Order, violate Plaintiff's substantive due process rights guaranteed by the Fifth Amendment.

77.     Defendants' actions, as described above, have deprived or will deprive Plaintiff of his liberty and/or property interests without notice or opportunity to be heard.

78.     Defendants' Due Process violations will cause ongoing irreparable harm to Plaintiff.

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

NDCA 3:20-cv-05948

### THIRD CAUSE OF ACTION
### (Due Process – Fifth Amendment)

79.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

80.     Sections 1(a) and 2(a) and (b) of the Executive Order alter the legal rights and obligations of private parties, including Plaintiff, independent of any action taken or to be taken by the Secretary of Commerce.

81.     These sections include conclusory descriptions of prohibited "transactions" related to ByteDance Ltd. and any of its supposed subsidiaries or controlled entities, to be determined by Secretary Ross at a future date, which provides no notice to Plaintiff or anyone else of the specific transactions or conduct that is prohibited by the Executive Order.

82.     Despite the vagueness of the Executive Order, violations of Sections 1(a) and 2(a) and (b) are punishable by prison and severe monetary fines.

83.     Moreover, Section 2 of the Executive Order creates what appears to be a new definition of "conspiracy" that does not exist in federal statutes.

84.     Plaintiff and other U.S. employees of TikTok and other persons subject to the Executive Order do not know whether their activities – including current activities that might form the predicate acts of a later-claimed criminal conspiracy – are prohibited by the Executive Order. Because of this uncertainty, they are justifiably fearful of engaging in any activity related to TikTok, including continuing to go to work.

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

85.     Sections 1(a) and 2(a) and (b) of the Executive Order provide inadequate notice of the conduct they purport to penalize and are therefore void for vagueness under the Fifth Amendment of the U.S. Constitution.

86.     Defendants' constitutional violations will cause ongoing irreparable harm to Plaintiff.

## FOURTH CAUSE OF ACTION
### (Equal Protection – Fifth Amendment)

87.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

88.     The Executive Order discriminates against Plaintiff and other U.S. employees of TikTok on the basis of the perceived nationality of the company they work for, in this case China, in that employees of other U.S. companies doing the exact same work or engaging in the exact same activities as TikTok employees are not subject to civil and criminal penalties or public shame and ridicule.  As such, the Executive Order violates the equal protection component of the Due Process Clause of the Fifth Amendment.

89.     Additionally, The Executive Order was substantially motivated by personal animus toward – and has a disparate effect on – TikTok (and its 1,500 U.S.-based employees), because President Trump incorrectly believes that TikTok is a "Chinese-controlled" company, in further violation of the Equal Protection Clause of the Fifth Amendment.

90.     Defendants' Equal Protection violations will cause ongoing irreparable harm to Plaintiff.

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

## FIFTH CAUSE OF ACTION
### (Administrative Procedures Act)

91.  Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

92.  The Administrative Procedures Act (the "APA"), 5 U.S.C. § 706(2). Prohibits federal agency action that is arbitrary, unconstitutional, or contrary to statute.

93.  In implementing the Executive Order, Defendants have taken unconstitutional and unlawful action, and have applied the provisions of the Executive Order arbitrarily, in violation of the APA.

94.  Defendants' violations of the APA will cause ongoing irreparable harm to Plaintiff.

## SIXTH CAUSE OF ACTION
### (Ultra Vires)

95.  Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

96.  Plaintiff has a cause of action in equity and under the All Writs Act, 28 U.S.C. § 1651, to declare unlawful and to enjoin a Presidential Executive Order or other Presidential action that is *ultra vires*. *See generally Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").

97.  A Presidential Executive Order issued in violation of the U.S. Constitution is *ultra vires* and therefore void *ab initio*.

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

NDCA 3:20-cv-05948

98.     President Trump's August 6, 2020, "Executive Order on Addressing the Threat Posed by TikTok" violates the Fifth Amendment by violating Plaintiffs' right to Due Process and the right not to be deprived of property for public use without just compensation.

99.     The Executive Order does not serve a "legitimate" governmental interest.

100.    The Executive Order is not narrowly tailored insofar as the definition of "transactions" prohibited under the order includes the payment of wages and salaries to U.S. employees of TikTok.

101.    Furthermore, on information and belief, President Trump has failed to satisfy the requirements and conditions of the exercise of power under the NEA by, among other things, §§ 1621(a), 1622(b), 1641(c), and 1703(a) and (b).

102.    President Trump has acted *ultra vires* by exercising emergency powers purportedly authorized by the IEEPA without consulting and reporting to Congress in the manner prescribed by the NEA.

103.    Plaintiffs have been and will be irreparably injured by President Trump's *ultra vires* Executive Order issued in violation of the Fifth Amendment and have no adequate remedy at law.

104.    Defendants' *ultra vires* acts will cause ongoing irreparable harm to Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.      Declaring that Executive Order 13942 to the extent it defines prohibited "transactions" to include the payment of wages and salaries to U.S. employees of TikTok constitutes an unconstitutional taking under the Fifth Amendment;

**BLACKSTONE LAW GROUP** LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

B.     Declaring that Executive Order 13942 to the extent it defines prohibited "transactions" to include the payment of wages and salaries to U.S. employees of TikTok is unconstitutional under the Due Process Clause of the Fifth Amendment;

C.     Declaring that Executive Order 13942 is unconstitutionally vague under the Fifth Amendment;

D.     Declaring that Executive Order 13942 violates the Equal Protection Clause of the Fifth Amendment;

E.     Declaring that Executive Order 13942 does not comply with the limitations on presidential power under the National Emergencies Act or the International Economic Emergency Powers Act and is therefore *ultra vires*;

F.     Declaring that Defendants are in violation of the Administrative Procedures Act as regards the implementation of Executive Order 13942;

G.     Preliminarily and permanently enjoining Defendants from enforcing Executive Order 13942 to prohibit the payment of wages and salaries of U.S. employees of TikTok; and

H.     Granting such other and further relief as this Court may deem just and proper, including an award to Plaintiff of the costs of this suit and reasonable attorneys' fees and litigation expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

Dated: Belmont, California
       August 24, 2020

By: /s/ Patrick S. Ryan
PATRICK S. RYAN – Cal. Bar No. 243711
*Local Counsel for Plaintiff*

and

**BLACKSTONE LAW GROUP LLP**

By: /s/ John D. Lovi
John D. Lovi (john@blackstone-law.com)*
Justin B. Perri (justin@blackstone-law.com)*
Alexander J. Urbelis (alex@blackstone-law.com)*

1201 Broadway, 9th Floor
New York, New York 10001
Telephone/ Facsimile: (212) 779-3070

*Lead Counsel for Plaintiff Patrick S. Ryan*

and

Michael Godwin Esq.*
DBA Godwin's Law (mikegodwinattorney@gmail.com)
*Cooperating Counsel*


\* *Pro Hac Vice Applications Forthcoming*

BLACKSTONE LAW GROUP LLP
1201 BROADWAY, SUITE 904A
NEW YORK, NEW YORK 10001
(212) 779 3070
Fax: (212) 779 3070

NDCA 3:20-cv-05948