**BLACKSTONE LAW GROUP LLP**
1201 Broadway, 9th Floor
New York, New York 10001
Tel./Fax:  (212) 779-3070
*Lead Counsel for Plaintiff*

Patrick S. Ryan – Cal. Bar No. 243711
1454 12th Street
Oakland, CA 94607
Tel.: (512) 333-1287
*Local Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PATRICK S. RYAN,<br><br>*Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America,<br><br>and<br><br>WILBUR L. ROSS, JR., in his official capacity as United States Secretary of Commerce,<br><br>*Defendants*. | Case No. 3:20-cv-05948 (VGC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER</u>**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. **Plaintiff Is Likely to Prevail on His Claims** ........................................................... 2

        1. **Plaintiff's Claims Are Ripe** ............................................................................ 2

        2. **Plaintiff Has a "Property" and a "Liberty" Interest in His Job and Paycheck** ............................................................................................................. 3

        3. **Plaintiff's *Ultra Vires* Claim** ........................................................................... 5

    B. **Plaintiff Will Suffer Irreparable Harm Absent This Court's Intervention** ..... 7

    C. **The Public Interest and Balance of Equities Weigh in Plaintiff's Favor** ....................................................................... 8

III. CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

## CASES

PAGE

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ... 4

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ... 4

*Bustamante v. Mukasey,* 531 F.3d 1059 (9th Cir. 2008) ... 2

*City of Santa Clara v. Trump, 250 F. Supp. 3d 497 (N.D. Cal. 2017*) ... 2

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ... 4

*Clinton v. City of New York*, 524 U.S. 417 (1998) ... 6

*Dames & Moore v. Regan,* 453 U.S. 654 (1981) ... 7

*Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020) ... 5

*Eguia v. Tompkins*, 756 F.2d 1130 (5th Cir. 1985) ... 3

*Greene v. McElroy,* 360 U.S. 474 (1959) ... 3

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ... 7

*Heineke v. Santa Clara Univ.,* 736 F.App'x 622 (9th Cir. 2018) ... 3, 8

*Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123 (1951) ... 5

*Kartseva v. Dep't of State,* 37 F.3d 1524 (D.C.Cir. 1994) ... 3, 4

*Kerry v. Din,* 576 U.S. 86 (2015) ... 2

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197 (9th Cir. 1980) ... 7

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ... 4

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ... 4

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ... 4

*Orloff v. Cleland*, 708 F.2d 372 (9th Cir. 1983) ... 3

*Prince v. County of Nassau*, 837 F. Supp.2d 71 (E.D.N.Y. 2011), aff'd 563 Fed.Appx. 13, 2014 WL 1465379 (2d Cir. Apr. 16, 2014) ... 3

*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) ... 6

*Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004) ... 3

*Stein v. Bd. Of City of New York, Bureau of Pupil Transp.*, 792 F.2d 13 (2d Cir. 1986) ... 3

*Turner v. City & Cty. of San Francisco*, 892 F. Supp. 2d 1188 (N.D. Cal. 2012) ... 3, 4

**PAGE**

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) ................................................................. 2


**ARTICLES**

Wendy Lee, *'I am part of the collateral damage': Trump's TikTok battle creates nightmare for some tech workers*, L.A. TIMES (Sep. 12, 2020) ............................................................ 4, 5

## I.   INTRODUCTION

The Government's brief tries to justify President Trump's Executive Order against TikTok by back filling the record with numerous documents purporting to justify the "national security" emergency necessitating the order.  This is obviously a pretext.  We know this because of what President Trump said himself about the reason for the Executive Order.  We further know that the Executive Order exceeds the authority granted the President under IEEPA, rendering the action *ultra vires* and *void.*

The issues before this Court are (i) is the right to a job and paycheck a protected right under the Fifth Amendment to which due process attaches; (ii) does the Plaintiff have standing to assert that right; and (iii) can the Plaintiff assert that right now.  We believe the answer to each of those questions is "yes."  Moreover, the Court must determine whether Plaintiff's due process and *ultra vires* claims are likely to succeed against the Defendants, and that irreparable harm will come to the Plaintiff if the Defendants are not enjoined.  Again, we believe the answer to those questions is "yes."  Therefore, we believe that the Plaintiff is entitled to an injunction enjoining enforcement of the Executive Order in toto.  Alternatively, Plaintiff should be entitled to the limited relief that the Executive Order cannot be enforced to prohibit TikTok's payment of wages and salaries to its U.S. employees.

The Government could have quashed Plaintiff's concerns that the Executive Order would affect his paycheck by simply telling this Court that the Secretary of Commerce did not intend to include payment of wages and salaries within the definition of prohibited transactions.  They did not.  And by not doing so they have signaled loud and clear that they either (i) intend to prohibit payment of wages and salaries within the definition or (ii) they intend to assert that the Executive Branch has the power to prohibit a U.S. company from paying its employees, even if that's not what they eventually decide to do in this instance.  Either way, this Court must intercede to uphold the protections afforded ordinary citizens by the U.S. Constitution against such sweepingly overbroad exercise of executive authority.  That is the proper and historical role of the Judiciary.  And this case is the proper vehicle, and now is the proper time, for this Court to step into its most prized and precious role in our democracy.

## II.     ARGUMENT

**A.     Plaintiff Is Likely to Prevail on His Claims.**

   **1.   Plaintiff's Claims Are Ripe**

The Government argues that Plaintiff's claims are not ripe because "they are premised on speculation regarding the scope and impact of the Executive Order as it will be implemented by the Secretary. . " (Opp Br. at 7.) This is not true. Plaintiff does not need to wait until he is injured to seek redress for a violation of his right to due process. His due process claim is "ripe if the perceived threat due to the putatively illegal conduct of the appellees is sufficiently real and immediate to constitute an existing controversy." *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982)). *See also Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008); *Kerry v. Din,* 576 U.S. 86 (2015). The Government's position was succinctly dispelled by this Court in the recent case of *City of Santa Clara v. Trump,* 250 F. Supp. 3d 497, 529 (N.D. Cal. 2017) ("Under the Government's line of reasoning, virtually all pre-enforcement cases would be non-justiciable on prudential ripeness grounds. But the possibility that the Government 'may' choose to interpret the Order's broad language narrowly or 'may' choose not to enforce it against the [plaintiffs] does not justify deferring review.")

It is obvious from the Ryan Declaration that Plaintiff and many of his U.S. colleagues are extremely concerned about whether the Executive Order will prohibit their paycheck and therefore constructively terminate their employment. As explained in detail in that declaration, losing a job in this terrible economy with the taint of your prior employment at TikTok on your resume is a real, material, and *bona fide* fear. And the fact that the Government did not take the opportunity in its reply to clarify that the Secretary of Commerce does not intend to include their paychecks within the definition of "prohibited transactions" simply adds to the fear and makes it more palpable. The arrogance of the Government's position that Plaintiff's fear is not actionable now because he technically is still employed is not supported by the caselaw and is repugnant to the jurisprudence of due process law.

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S EX PARTE
MOTION FOR A TEMPORARY RESTRAINING ORDER (NDCA 3:20-cv-05948)

- 2 -

**2. Plaintiff Has a "Property" and a "Liberty" Interest in His Job and Paycheck**

The Government argues that Plaintiff has no "constitutionally protected property or liberty interests" in his job or paycheck. (Opp Br. at 8.) The Government cites *Sagana v. Tenorio,* 384 F.3d 731, 743 (9th Cir. 2004) for the proposition that there is no "fundamental right" to employment at a specific job. *Id.* However, the Government ignores the fact that the Due Process guarantees of the Fifth Amendment protect more than just "fundamental rights." And there is no question – and the Government has no answer – to the myriad of cases making clear that a person has a constitutionally protected property and liberty interest in his job and paycheck that trigger the due process guarantees of the Fifth Amendment.

"There can be no doubt that the plaintiff's interest in his salary and expense reimbursement is a property interest protected by the Constitution." *See Eguia v. Tompkins*, 756 F.2d 1130, 1138 (5th Cir. 1985) (citing *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342 (1969)); *see also Orloff v. Cleland,* 708 F.2d 372, 378 (9th Cir. 1983) ("It is obvious that Orloff had a property interest in his salary."). Similarly, a person's "right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492 (1959); *see also Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994) (acknowledging a "constitutionally protected 'right to follow a chosen trade or profession'" (quoting *Cafeteria & Rest. Wkrs. U., Loc. 473 v. McElroy*, 367 U.S. 886, 895–96 (1961))). *See also Stein v. Bd. Of City of New York, Bureau of Pupil Transp.*, 792 F.2d 13, 17 (2d Cir. 1986); *see also Prince v. County of Nassau,* 837 F. Supp.2d 71 (E.D.N.Y. 2011), *aff'd* 563 Fed.Appx. 13, 2014 WL 1465379 (2d Cir. Apr. 16, 2014) ("Where the independent source of a property interest is a private contract, the state cannot transgress on the claim of entitlement to continued employment without due process of law.")

"The significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood." *Cleveland Bd. of*

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S EX PARTE
MOTION FOR A TEMPORARY RESTRAINING ORDER (NDCA 3:20-cv-05948)

- 3 -

*Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) (citations omitted). "While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." *Id.* (citations omitted). "A person has a liberty interest in employment protected by the Due Process Clause if the dismissal effectively precludes future work in the individual's chosen profession." *Turner v. City & Cty. of San Francisco*, 892 F. Supp. 2d 1188, 1212–13 (N.D. Cal. 2012) (quoting *Braswell v. Shoreline Fire Dept.*, 622 F.3d 1099, 1102–03 (9th Cir.2010)). "A person's liberty interest is also implicated if 'the dismissal is for reasons that might seriously damage his standing in the community.'" *Id.* (quoting *Braswell*, 622 F.3d 1099). "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972) (citations and quotations omitted).[1]

The D.C. Circuit, in *Kartseva v. Dep't of State*, 37 F.3d 1524, 1527 (D.C. Cir. 1994), addressed this issue, finding that "[g]overnment action that potentially constrains future employment opportunities must involve a tangible change in status to be actionable under the due process clause. If a government action does constitute an adjudication of status under law, the underlying factual and legal determinations are subject to due process protections." The *Kartseva* court quoted Justice Frankfurter who explained that adjudications of 'subversive' status via a procedure of 'ex parte summary designation' contravened due process:

> That a conclusion satisfies one's private conscience does not attest its reliability. The validity and moral authority of a conclusion largely depend on the mode by which it was reached. Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than

---

[1] Once it is determined that the Due Process applies, "the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). The contours of what constitutes adequate due process is found in a number of cases. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950); *Boddie v. Connecticut,* 401 U.S. 371 (1971); *Matthews v. Eldridge,* 424 U.S. 319, 335 (1976) (as applied in the employment context). Here, the Court does not need to reach this far in its due process analysis because the Executive Order provides ***no process whatsoever*** for Plaintiff to confront and address his grievances with the government.

>to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it. Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done

*Joint Anti–Fascist Committee*, 341 U.S. at 171–72 (Frankfurter, J., concurring). *See also id.* at 179 (Douglas, J., concurring) ("It is procedure that spells much of the difference between rule by law and rule by whim or caprice."); *id.* at 186 (Jackson, J., concurring) ("To promulgate with force of law a conclusive finding of disloyalty, without [a] hearing at some stage before such finding becomes final, is a denial of due process of law.").

Here, the Executive Order not only puts Plaintiff's paycheck and job in danger, it effectively destroys his reputation and puts tremendous constraints on his future employment. Mr. Ryan is a technical engineer whose job is to monitor and secure data flows of user information from the social media platforms he works on. The Executive Order in effect accuses Mr. Ryan of being beholden to China and willing to misuse TikTok user information he monitors and secures for the nefarious purposes of the Chinese Communist Party. Plaintiff is rightly concerned that without an opportunity to confront the U.S. Government about these allegations, he will never have recourse to clear his name, his reputation, or be able to secure future employment in the field he has spent decades working in.[2]

### 3. Plaintiff's *Ultra Vires* Claim

The President's authority to issue an executive order "must stem either from an act of Congress or from the Constitution itself." *Doe #1 v. Trump,* 957 F.3d 1050, 1062 (9th Cir. 2020) (quoting *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 585 (1952)) Where neither a congressional statute nor the U.S. Constitution authorizes the President's order, a plaintiff injured by that order may

---

[2]   The negative effects of the Executive Order are already being reported. *See,* Wendy Lee, "'I Am Part of The Collateral Damage': Trump's TikTok Battle Creates Nightmare for Some Tech Workers," *L.A. Times,* September 12, 2020

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S EX PARTE
MOTION FOR A TEMPORARY RESTRAINING ORDER (NDCA 3:20-cv-05948)

- 5 -

bring an equitable *ultra vires* action to enjoin the president's unlawful conduct. *See Sierra Club,* 963 F.3d at 890-92; *Chamber of Commerce v. Reich,* 74 F.3d 1322, 1327-28 (D.C. Cir. 1996).

Here, the Government claims that the president's authority to issue the Executive Order is authorized under the broad powers granted under IEEPA. (Opp. Br. at 13.) However, IEEPA was passed by Congress specifically to reign in – not expand – presidential authority. *See Sacks v. Office of Foreign Assets Control,* 466 F.3d 764, 776 (9th Cir. 2006) ("IEEPA was passed by Congress to counter the perceived abuse of emergency controls by presidents to unilaterally sanction foreign governments or interfere with international trade in non-emergency, peacetime situations.") Indeed, IEEPA explicitly limits the emergency powers it authorizes. *See* 50 U.S.C. § 1702(b) (limited authority granted to the President does not include power to "regulate or prohibit, directly or indirectly . . . (1) any postal, telegraphic, telephonic, or other personal communication, which does not involve a transfer of anything of value; . . . (3) the importation from any country, or the exportation to any country . . . of any information or information materials . . ."). Because TikTok clearly is a form of "personal communication" and facilitates the importation and exportation of information among its users, it clearly falls outside the authority granted the President under IEEPA.[3]

In addition to the Executive Order exceeding the explicit authority granted under IEEPA, it also runs afoul of other provisions of IEEPA that President simply ignored when issuing his Executive Order. *See Clinton v. City of New York,* 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the president to enact, to amend, or to repeal statutes."). Thus, although the President's independent authority in the realm of foreign affairs and national emergencies is expansive where Congress has consented to the President's exercise of broad unilateral powers, the president does not

---

[3] Plaintiff's *ultra vires* claim is substantively identical to the claim asserted by WeChat in a similar case pending in the N.D. Cal. regarding a different executive order signed by President Trump the same day as the Executive Order against TikTok. *See U.S. WeChat Users Alliance, et al. v. Trump, et ano.,* Case No. 3:20-cv-0510-LB.

have the authority to defy validly enacted statutory limits on his authority. *Dames & Moore v. Regan,* 453 U.S. 654 (1981); *Hamdan v. Rumsfeld,* 548 U.S. 557, 593 n.23 (2006) ("Whether or not the President has independent power, absent congressional authorization, to convene military commissions, he may not disregard limitations that Congress has, in proper exercise of its own war powers, placed on his powers.") Because the Executive Order against TikTok clearly exceeds the powers conferred upon President Trump under IEEPA, it is *ultra vires* and the Defendants should be enjoined from enforcing it, particularly as it relates to the payment of wages and salaries to U.S. employees of TikTok, which has no conceivable "national security" implication, and the Government has not even tried to assert one.[4]

**B.      Plaintiff Will Suffer Irreparable Harm Absent This Court's Intervention**

The Government, citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197 (9th Cir. 1980), argues that Plaintiff has not established that he will suffer irreparable harm because his loss of income does not qualify. (Opp Br. at 14.) But the only loss that plaintiff was trying to prevent in that case – "lost revenues" – was found by the Ninth Circuit to be one for which "adequate compensatory or other corrective relief will be available at a later date," which "weighs heavily against a claim of irreparable harm." *See id.* at 1202. That is not the case here, where Plaintiff complains of extensive harms that cannot be recovered without this Court's injunctive relief. (Declaration of Patrick S. Ryan, made on September 5, 2020, ("Ryan Decl.") ¶¶ 15–22.)

---

[4]      Much of the material attached to the Government's Declaration is false or misleading, and the space constraints of this Reply Memorandum do not allow us to go through each of them in detail. However, it is of particular note that the Government attempts to smear the founder of ByteDance in its papers. The Government's statement that the CEO of Bytedance has committed TikTok to promoting the agenda of the CCP is simply false. (Opp Br. at footnote 1.) The Government's support for this false assertion is a position paper of an Australian think tank which, in turn, cites a website purporting to contain an unverified translation of Zhang Yiming's political apology to the CCP about an unrelated news aggregator app, Toutiao. The primary source of this information never mentions TikTok or even Bytedance and, moreover, specifically notes that Zhang's statements were effusively apologetic only to "tick[ ] the necessary ideological boxes."

The Government also argues that Plaintiff's claims of emotional and reputational harm are speculative, directing the Court to *Heineke v. Santa Clara Univ.*, 736 F. App'x 622 (9th Cir. 2018). First, the parenthetical quote taken from *Heineke* acknowledges that "an extreme case of lost income **or** reputational harm might constitute irreparable injury," (*id.* at 624) (emphasis added) which flies in the face of the Government's first point, that "mere injuries in terms of money are not enough." (Opp Br. at 14.) Second, the Government is discounting Plaintiff's concerns over retaliation and reputational harm when Plaintiff has already seen many comments on social media calling TikTok employees "disloyal Americans or Communist sympathizers." (Pl. Br. at 14).

**C.      The Public Interest and Balance of Equities Weigh in Plaintiff's Favor**

The Government's argument that the balance of equities tips in its favor is based on a false premise. The Government complains that Plaintiff seeks an "order that substitutes the views of a single TikTok employee for that of the Executive Branch" (Opp Br. at 15) but fails to explain how the relief sought by Plaintiff in its Proposed Order (Dkt. 12-3) would, in any way, "frustrate and displace the President's exercise of discretion, and would not serve the public interest." (Opp Br. at 15.) Again, the Government's brief argues too much, and not enough. It sets up a "strawman" argument that assumes that the TRO will enjoin the entirety of the Executive Order, and never once tries to explain how paying TikTok employees their wages and salaries effects vital national security interest. The Court must weigh the scope and effect of the injunction the party seeks in a matter against the perceived harm done to the Defendants. Here, there simply is nothing the Government has said or can say in its defense.

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S EX PARTE
MOTION FOR A TEMPORARY RESTRAINING ORDER (NDCA 3:20-cv-05948)

- 8 -

### III. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court grant his motion to prevent the implementation of the Department of Commerce from enforcing the Executive Order to the extent such order prohibits TikTok, Inc. from paying wages and salaries to its U.S. employees.

Dated: September 12, 2020

| | |
|---|---|
| **BLACKSTONE LAW GROUP LLP**<br>By: /s/ John D. Lovi<br>    John D. Lovi (john@blackstone-law.com)*<br>    Justin B. Perri (justin@blackstone-law.com)<br>    Alexander J. Urbelis (alex@blackstone-law.com)<br>1201 Broadway, 9th Floor<br>New York, New York 10001<br>Telephone/ Facsimile: (212) 779-3070<br>*Lead Counsel for Plaintiff* | By: /s/ Patrick S. Ryan<br>    Patrick S. Ryan – Cal. Bar No. 243711<br>    Michael Godwin (mike@godwins.law)<br>1454 12th Street<br>Oakland, California 94607<br>Tel.: (512) 333-1287<br>*Local Counsel to Plaintiff* |

\* *Admitted Pro Hac Vice*

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S EX PARTE
MOTION FOR A TEMPORARY RESTRAINING ORDER (NDCA 3:20-cv-05948)

- 9 -